# United States District Court in Maryland

Lawrence V. Wilder
P.O. Box 47310
Windsor Mills, Maryland 21244

**CCB 09CV1734**

V

Civil Case

~~FILED~~ ~~ENTERED~~
~~LODGED~~ ~~RECEIVED~~

Toyota Motor Credit Corporation
19001 South Western Avenue
Torrance, California 90509

JUN 2 6 2009

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

Unknown agents

### Complaint and Motion to Appoint Counsel

Plaintiff files the complaint for violations of the Fair credit Reporting Act and Fair Debt Collections Reporting Act and Bevins constitutional violation claim.

The plaintiff requests appointment of counsel.

The plaintiff requests a hearing.

The defendant violated the FCRA and FDCA after the plaintiff satisfied the debt and was sent a letter of credit satisfaction. The plaintiff provides the Toyota Headquarters letter dated 9/21/1995 and Equifax credit report investigations years later which show the satisfied account as a charge account.

**The letter is also a President Ronald Reagan and Supreme Court Justice Thurgood Marshall pardon letter. This letter must never get disrespected.**

The plaintiff's credit suffered because of the intentional acts by the defendant. His creditability at his Federal employer was damaged, unfavorable credit terms caused him to spend thousands more than if the charge off was not being reported, the error caused the plaintiff to file for bankruptcy in 2003.

The plaintiff seeks $ 20,000,000, for the intentional violations of his rights. The damages include punitive damages.

Lawrence Wilder

Rent $780

Back Rent $4110       After 6 $A Monthly Check $4626
                                                        $1037.00

Utilities $144   Hotel Crimes
                 reneginer, promise to release
                 promise financial responsibility
                 from financial responsibility

Foods House Necessities 506

Student loan 129

Credit Card 1996

Credit Card 1789

Soc. Sec. Dis. suspension payment from 9/7/07 - 5/8/2008, because of erroneous felony fugitive warrant law enforcement agency labelling.
(Waiver of suspension overpayment.
                        $13,330

Monthly overpayment to SSA  $166.00/mo
                             $203.00

Phone Bill

Medical Debts from involuntary commitment order by State of Maryland District Court
Sinai Hospital, 1,710
Northwest Hospital 1,409
Transcare Ambulance 315
Brooklyn NY

Medicare Premiums Arrearage Debt from U.S. SSA & Ctr. for Medicare & Medicaid error to deduction of SSA check (to Aetna) $2382.00

Loans from homelessness from, Illegal eviction
4/24/08 - 6/30/08                        $2122.00

Expenses (Employment, Illegal)      350.00/mo
                                    101.19/mo
Insurance                           6019
IRS lien                            97.72/mo
Medicare Premiums                   75.00/mo
Monthly Health Expenses)            719.52/mo
Child support

# Hardship Consideration and Good Cause Filing Waiver

Plaintiff was removed from Federal Service from the Department of Health and Human Services, Centers for Medicare and Medicaid Studies on May 6, 1997 for alleged unprofessional contact and insubordination. On April 9, 1998, plaintiff was approved for psychiatric disability retirement by the Office of Personnel Management retroactive to May 7, 1997. It is logical to accept the opinion that the mental disability manifested in my behavior prior to May 7, 1997. One doesn't wake up and become psychiatric disabled. A progression from stressful stimuli gradually resulted in my mental illness. This progression was observed and mentioned by various management officials at the Department prior to my removal. The Associate Administrator for Management Steve Pelovitz, Micheal McMullan, Bureau Director Regina McPhillips, Office Director Robert Moore, Division Director Joe Hladaky, Branch Chief Francis Jones, Jr and Branch Chief Winston Edwards had the perception of possible mental health decline. When Francis Jones proposed my removal from Federal service (March 4, 1997) and

Dr. Regina McPhillips approved the removal from service (May 6, 1997), they violated 5 C.F.R. 844.404 and 5 C.F.R. 844.202, which obligated the Department to help employees, who are facing removal with suspected mental illness, complete applications for benefits for them, citing there mental vulnerability.

The Department failed to provide the correct notice to a vulnerable employee to appeal the removal. The location of MSPB office to appeal the removal decision (1997) was given as Falls Church, Virginia. Today the MSPB office to appeal is in Philadelphia, Pennsylvania. The Department's notification of appeal rights was confusing , incorrect, and ambiguous to an employee who they believed was suffering from a mental disability while subjecting him to removal from Federal service adverse action  (5 C.F.R. 844.202). The Department had the duty to provide appeal rights that were not incorrect or ambiguous. When the Department provided appeal rights that were ambiguous or incorrect, they had the responsibility to correct the erroneous information and notify the mentally disabled employee being removed from Federal service. This responsibility was breach by not providing the corrected appeal rights.

By neglecting the duty to provide the correct or unambiguous appeal rights, my time to appeal, (considering my OPM certified psychiatric disability, the Department's knowledge of possible mental disability, and no legal representation) my time to appeal the wrongful removal is tolled. The Department is also guilty of failing to offer reasonable accommodation and intentionally failing to consider Douglas factors and Metz factors before and after the OPM application process and the approval of OPM psychiatric disability retirement (effective date May 7, 1997). The plaintiff has participated in mental health care since 1997. The Department has also violated 5 C.F.R. 844.202 by failing to disclose and help me with applying for various benefits as an employee perceived with a psychiatric disability. This violation should enable me to toll the time to apply and compel the Department's participation.

From April 9, 1998 (OPM psychiatric disability retirement approval date retroactive to May 7, 1997), no court or administrative board (U.S. Federal, EEOC, or MSPB) acknowledged the decision to approve psychiatric retirement until MSPB Northeastern Regional ALJ Lystra Harris applied the French factors appropriate for a MSPB appellant who has experienced a psychiatric

disorder (see attached decision dated 8/6/2008). The concern was previously included in an opinion by U.S. District Court of Maryland Judge Frederick Nelson Smalkins during the latter 1990s. The Judge noticed the onset of a psychiatric disability, (without approving court-appointed counsel) but my accusations were true not delusional.

DHHS management, DHHS Office of General Counsel, DHHS Equal Employment Opportunity offices, and the Equal Employee Opportunity Commission, participated and insisted to proceed in the investigation, adjudication, and final determination of my claims of discrimination, prohibited personnel practice, and reprisal, while the DHHS and the EEOC knew of my psychiatric disability (this sadistic ,unconstitutional, and racist treatment was a result of the Nassau County, New York trial of Colin Ferguson, although I was innocent). This denial is still presently illustrated by the Equal employment Opportunity Commission and DHHS in agency decision letters.

The EEOC Baltimore Field office and DHHS, OS, BHRC, still refused to accept the fact that holding a psychiatric disabled employee to decisions reached without the help of counsel is consistent with the Congressional intent to protect employees rights to present claims of discrimination, prohibited personnel practice, reprisal investigated and decided without fraud, intimidation, retaliation, discrimination, and obstruction. The Department decision letter dated 10/3/2008 and prepared by Jacqueline Taylor, DHHS, OS, BHRC was mailed with no appeal rights attached. This is a continuing violation with DHHS, Office of the Secretary and the MSPB. DHHS, OS, EEO office employee Christine Smith has continuously failed to provide complete and accurate appeal rights to a person who is knows is retired because of mental disability.

The MSPB has determined that appellant's who were force to proceed without representation of counsel and suffered from a mental disability, did not get a fair adjudication of their appeals by the Board and the Administrative Law Judge. I feel the EEOC, DHHS, and the Federal Courts would concur with these decisions. My attempts to retain counsel resulted in 20 requests of retainers ranging from $ 3,000 to

$ 10,000, denials because of difficulty, denials because of licensing to practice, or unreturned phone calls (2).

Beginning in early 2006, I experienced several emotional traumatic situations that I believe are a result of my involvement in Equal Employment Opportunity Commission proceedings at NASA, DHHS, SSA, OPM, EEOC, and DOL. I believe current and former employees are involved and attempting to cause injury and harm to stop me from learning the truth of the wrong doing inflicted upon me and to hurt my opportunity with my employment efforts.

In 2007, I was targeted because I help vulnerable adults.

In 2008, was a victim of two illegal evictions, one in Baltimore County, and one in Baltimore City. I was discriminated against because of psychiatric disability.

In 2007, I was the victim of eight home invasions (with assault) and hate crimes.

In 2008, I was falsely imprisoned from 1/14/2008 – 2/19/2008 because of a domestic crime I didn't commit. I was given a $ 100,000 bail for a 1st offense contempt of court order violation charge. There was no violation, because I was never served the order or appeared in court to defend myself. I was falsely accused of a serious Federal crime (threatening a Federal judge) and a victim of a failed frame-up attempt. I was determined innocent without a subsequent apology for the false accusation or the decency to inform others of the seriously injurious mistake. The threatening of a Federal judge false accusation by AJ Elizabeth Milligan has made me very paranoid when contacting the MSPB NER office after the DHS agents visited my residence. A couple in Maryland was falsely accused of bank robbery and shot in the face by Federal agents acting on false information.

As a result of the false accusation of a serious Federal crime my residence was raided by U.S. DHS agents (one Agent Maurice Graham, who was intentionally attempting to intimidate me from participation in the EEO complaint process.

I experienced racial profile traffic stops in Maryland and Virginia where I was denied my right to appear in court and appeal the charges (the court dates were scheduled on the exact same day May 7, 2008). Law Enforcement committed perjury to get a wrongful conviction.

I was falsely accused of a domestic violation in New Jersey when I unknowingly contacted a former friend after ten years of contact on my part (she intentionally travelled at least 30 times in 10 years to violate the order). I was interpreting the order according to State of Maryland laws (and her actions). Actually, I was never charged with a crime against her (she was charged with assault against me). The domestic order she was granted (the Judge provided for mutual enforceability) was obtained by perjury and her access to counsel. She has knowing violated the order on multiple occasions, yet she was never held responsible for her actions. The court order was illegally obtained to prevent illegal eviction liability of a non-violent psychiatric disabled tenant. The unintentional misdemeanor 1st offense was given a felony label and I was given a no bail bond. My SSA disability was suspended because of the felony label for nine months (9/2007 – 6/2008). This caused major financial, personal, and professional hardship from the false accusation, abuse of process, and wrongful conviction.

After being falsely accused of a 1st offense domestic order violation, (after the alleged victim committed multiple acts of perjury including accusing me an unbelievable 100 domestic criminal counts) State of Maryland District Court Judge Barbara Jung issued a warrant for my arrest for committing 100 criminal domestic crimes. I was never served the order or able to defend myself in court. At my bail review, I was given a $ 100,000 bail by State of Maryland District Court Judge Nancy Purpora for a 1st offense misdemeanor contempt offense. The same court gave a repeat offender pedophile school teacher school teacher, who was accused of raping a 14 year old girl, while photographing her a $ 50,000 bail.

While incarcerated at the Baltimore County Detention Center from 1/14/2008 – 2/19/2008, I was subjected to mental disability discrimination by correctional officers. I was assaulted, confined to lockdown 24 hours a day, and placed in the suicide observation cell, because I requested medication for depression (I never stated that I was trying to hurt myself). I was retaliated against because I was attempting to get medical attention for a juvenile inmate who

didn't have a bowel movement in 9 days (at least at the time of my release). After I was found not guilty of all charges and released, I learned that I was illegally evicted and homeless. Several of my personal belongs were stolen as a result of the illegal eviction.

My hardship is demonstrated by the State of Maryland obstructionist behavior to help with a DNA paternity test.

The State of Maryland is guilty of committing the violation of double jeopardy (I actually call it centennial jeopardy), by attempting to hold false accusations, not guilty charges, and wrongful convictions against me. I requested employment applications from the State of Maryland. The only applications were from the State Police fingerprinting background check division and the State lottery (signed by a Mr. Simpson).

When I attempted to inquire about a lawyer referrals at the University of Maryland Law Library (a place I am entitled to visit, because of my University of Maryland system Alumni qualifications), I was subjected to search and barred from the building. My multiple prior visits to the library were without incident. I strongly believe this was retaliation by Maryland alumni (or faculty) involved in my discrimination claims. I was discriminated because of disability.

I am being retaliated against by law enforcement because of complaints filed with the U.S. DOJ. They have been very vocal with my involvement to stop the harassment.

I am presently a victim of community stalking and hate crimes at my present residence located at 9 Rambling Oaks Way, Apt. H, Catonsville, Maryland 21228. I reported the incidents to the rental management, local police, and HUD, yet the violations continue.

The women who filed the false domestic charges against me have directly (and by proxy) stalked, attempted to intimidate, and assault me.

I filed charges against the women for stalking, domestic violence, arson threat, filing a false police report, verbal threats, and poisoning. The Maryland and New Jersey States Attorney offices decline to prosecute in all cases, yet issued warrants for my arrest when they filed complaints for less severe crimes (including a violation of an unenforceable court order).

When I tried to file a complaint of multiple violations of a permanent New Jersey restraining order from 1998 – 2008, I was denied. When I was accused of non-threatening verbal contact, I was fully prosecuted by Union County, New Jersey. I have never been charged with any crime against this woman.

I was involuntary committed to Northwest and Sinai Hospital Mount Pleasant One in Randallstown and Baltimore, Maryland from 4/2/2008 (my anniversary date of constructive resignation from NASA Goddard Space Flight Center) through April 24, 2008, by order of the State of Maryland District Court in Towson, because of perjury and to force an illegal eviction (the State of Maryland District Court was never involved in any eviction proceeding, only used to violate my right to defend). This commitment order was approved because of accusations of threatening my parents (this accusation occurred only months after the false Federal accusation). My mother, who I was alleged to have threatened, stated to the doctors (Dr John

MacDonald, Sinai Hospital) and social workers that there was never no threat and I was never threatening to her. The staff at Sinai hospital ignored her defense of me and held me for 22 days until I contacted an attorney. The staff also tortured, abused, and discriminated against me. After contacting the attorney, I was released the next day. I also suspect the Department of Health and Human Services, Centers for Medicare and Medicaid Studies because of involvement in a discrimination complaint.

The Department has sabotaged (with willing physicians) my access and mental health treatment, since I was removed from Federal Service and approved for Office of Personnel Management psychiatric disability retirement. I was given pharmacy scraps as willing physicians prescribe medicine under political pressure by the Department of Health and Human Services, Centers for Medicare and Medicaid Studies. I was limited to no Part B insurance, because of an error by DHHS and SSA who neglected to deduct my premiums during open season enrollment. The Department (by way of employees, present and former) have stalked me, since I began seeking justice as a result of my wrongful discharge and civil and constitutional violations. After being removed from Federal service and approval for OPM psychiatric disability retirement (5/6/1997 and 4/9/1998, respectfully), the Department has intentionally obstructed my treatment goals , by getting willing doctors to prolong my healing, vocational rehabilitation, and limiting my options to let time expire to apply for benefits and appeal administrative decisions. The Department used political pressure to cause legal and financial problems. I believe the Department was responsible for assaults and injuries I sustained. An example of this was demonstrated when I sought help after sustaining a visible burn injury to my

genitals during a domestic violence assault. Dr. Gerald Zellinger and Dr. Janet Soeffering were summoned to give a statement of my injuries at the domestic violence assault court date. Neither responded and the batterer charges were dismissed. I later discovered that Dr. Zellinger's employer was listed on the State of Maryland physician license verification website as 7500 Security Boulevard, Woodlawn, Maryland 21244 (my former employer).

I have also been the victim of hate stalking at the University of Maryland, Baltimore County (the school I that I graduated).

I also began attempting to secure a new trial of an old criminal case in Howard County, Maryland (because of the State and Federal jeopardy violations) because of representation of counsel who was practicing outside the ethical boundaries of a member of the Bar. My counsel was indicted, disbarred, and served a Federal prison sentence. Law enforcement and the courts are presently harassing, intimidating, attacking, and assaulting me for pursuing this manifest injustice. The State and Federal courts are guilty of practicing centennial jeopardy using unjust misdemeanor convictions from the Reagan and Persian Gulf war era.

I am attempting to secure a new trial of convictions in North Carolina from Police and prosecutorial misconduct. The courts in North Carolina are in denial of the racially charged environment and police misconduct (e.g. planted evidence, warrantless searches, Government intimidation and interference of counsel) that lend reasonable doubt to any conviction reached.

I currently experienced harassment from local law enforcement because of efforts to approve a not guilty reversal decision because of fraud, law enforcement misconduct, ineffective counsel,

prosecutor misconduct, failure to consider my disability, non-diverse court representation (every participant in court was Caucasian), and linking my case with a capital punishment case. The officers lied about an odor of alcohol and marijuana in my vehicle, attempted to order me to the exact crime scene of the capital crime, then committing perjury by testifying in court that I attempted to run them over with my vehicle when they were behind the car. I was a vulnerable adult and couldn't comprehend what was truly happening. My physicians were never contacted and I believe may have had a role in the incident, because when I mentioned that I felt harassed by repeated racial profile traffic stops and violations, she discounted my feelings as delusional. My public defender ignored my statements and withheld the important fact that the instructions by the law enforcement officers were going to put me at the scene of the capital punishment offense. I strongly believe that everyone in the court knew this fact except for me and wrongfully convicted an innocent person.

After being wrongfully terminated and rights afforded to a psychiatric disabled employee, I experienced various unlawful law enforcement situations. I strongly believe Government employees, law enforcement, and my former physicians are targeting me because of my Federal civil rights discrimination involvement, while being a vulnerable adult.

In North Carolina (1998), a policeman committed perjury to get a conviction against me. I appealed the conviction and the charges were dismissed after the officer admitted that he never witnessed the crimes he testified to in court.

I was racially profiled stop in New Jersey, Maryland, North Carolina, and Virginia by police officers with the last name of Jones (the same name as my former Branch Chief at the Department of Health and Human Services).

In Baltimore County, Maryland, I was charged and arrested with participating theft from a store. The charges were dismissed because I committed no crime.

In Baltimore City, another police officer with the last name of Jones entrapped and arrested me for the crime of unlawful possession and distribution of prescription drugs. I was found not guilty of the crime.

In Baltimore City, I was arrested and assaulted by an Officer White because of loitering while I walked to meet with my attorney. I was found innocent of charges.

In Baltimore City, I was arrested by an Officer Robinson while visiting a relative and charged only with loitering. Officer Robinson made references to a EEOC case that I was involved in with the Department of Health and Human Services before he arrested me.

In Baltimore County was arrested for violating domestic a protective order that I was never aware of or able to defend myself against in court. Officer Buttons (White Marsh precinct) was responsible for service and failed to serve me with the order. The order was granted by the woman responsible for domestic violence against me and was order to stay away from me. When she lied (including statements of 100 harassing phone calls) and conspired with the court

to get the order and arrest me, I was arrested at my residence when officers (Covington and Thompson) entered my bathroom while I was bathing and was held for 35 days in the Baltimore County Detention Center. She had already committed genital mutilation against me and was never held responsible. When I reported her crimes she was never prosecuted and I never able or notified to attend any court dates. She never informed the court of a housing discrimination complaint as the reason for any contact.

This year she has stalked and sent individuals to intimidate and assault me. While I was using the computers in the Highland neighborhood library, where she told the courts she stopped working, I was confronted by individuals and security. When I told them she informed the court that she stopped working in the neighborhood, so my presence there was in violation of anything and she had a responsibility to obey the order, not just me. I believe she was stalking me, because I didn't know how she knew I was at the Enoch Pratt Highland library.

I reported a theft of my M & T Bank account and a possible fraudulent check she asked me to cash, because her established account at Bank of America refused to cash the check from Puerto Rico. She has knowledge of individuals who were found guilty of embezzlement and maybe guilty. She has conspired with law enforcement to violate my civil rights and to stop prosecution for her civil rights, stalking, theft, and domestic violence crimes.

My Social Security disability payments were suspended 9 months (9/2007 – 6/2008) because of incorrect information of a wrongful conviction (greater than $ 13,000). This financial hardship occurred while I was illegally evicted from my residence (April – May 2008), involuntary committed to Sinai Hospital (after the false accusation of threatening my parents, order served by Officer Jackson, Baltimore County Police) and homeless (April 2008 to July 2008) . I was subjected to a brain scan while at Northwest hospital in Randallstown on April 2, 2008.

I was threaten to be shot in the back by Baltimore County police officer Dunning, while visiting my son's school, because of attendance and to find his mother who is in contempt of a visitation order since March 2006.

I believe the residences I rented had cameras filming me.
Out of

Lawrence V. Wilder



# **Federal Trade Commission**
## **Protecting America's Consumers**

---

## *Facts for Consumers*     Email   PDF Format   En Español

---

# Credit and Your Consumer Rights

A good credit rating is very important. Businesses inspect your credit history when they evaluate your applications for credit, insurance, employment, and even leases. They can use it when they choose to give or deny you credit or insurance, provided you receive fair and equal treatment. Sometimes, things happen that can cause credit problems: a temporary loss of income, an illness, even a computer error. Solving credit problems may take time and patience, but it doesn't have to be an ordeal.

The Federal Trade Commission (FTC) enforces the credit laws that protect your right to get, use and maintain credit. These laws do not guarantee that everyone will receive credit. Instead, the credit laws protect your rights by requiring businesses to give all consumers a fair and equal opportunity to get credit and to resolve disputes over credit errors. This brochure explains your rights under these laws and offers practical tips to help you solve credit problems.

## Your Credit Report

Your credit report contains information about where you live, how you pay your bills, and whether you've been sued, arrested, or filed for bankruptcy. Consumer reporting companies sell the information in your report to businesses that use it to evaluate your applications for credit, insurance, employment, or renting a home.

**The federal Fair Credit Reporting Act (FCRA)** promotes the accuracy and privacy of information in the files of the nation's consumer reporting companies. Under the Fair Credit Reporting Act:

- You have the right to receive a copy of your credit report. The copy of your report must contain all the information in your file at the time of your request.

    - Each of the nationwide consumer reporting companies – Equifax, Experian, and TransUnion – is required to provide you with a free copy of your credit report, at your request, once every 12 months. The companies are rolling this out across the country during a nine-month period. By September 2005, consumers from coast to coast will have access to a free annual credit report if they ask for it. For details, see Your Access to

Free Credit Reports at ftc.gov/credit.

- Under federal law, you're also entitled to a free report if a company takes adverse action against you, like denying your application for credit, insurance, or employment, and you ask for your report within 60 days of receiving notice of the action. The notice will give you the name, address, and phone number of the consumer reporting company. You're also entitled to one free report a year if you're unemployed and plan to look for a job within 60 days; if you're on welfare; or if your report is inaccurate because of fraud, including identity theft.

- Otherwise, a consumer reporting company may charge you up to $9.50 for another copy of your report within a 12-month period.

- You have the right to know who asked for your report within the past year – two years for employment related requests.

- If a company denies your application, you have the right to the name and address of the consumer reporting company they contacted, provided the denial was based on information given by the consumer reporting company.

- If you question the accuracy or completeness of information in your report, you have the right to file a dispute with the consumer reporting company and the information provider (that is, the person, company, or organization that provided information about you to the consumer reporting company). Both the consumer reporting company and the information provider are obligated to investigate your claim, and responsible for correcting inaccurate or incomplete information in your report. For details, see How to Dispute Credit Report Errors at ftc.gov/credit.

- You have a right to add a summary explanation to your credit report if your dispute is not resolved to your satisfaction. You also can ask the consumer reporting company to provide your statement to anyone who received a copy of your report in the recent past. You can expect to pay a fee for this service.

## Your Credit Application

When creditors evaluate a credit application, they cannot engage in discriminatory practices.

**The Equal Credit Opportunity Act (ECOA)** prohibits credit discrimination on the basis of sex, race, marital status, religion, national origin, age, or receipt of public assistance. Creditors may ask for this information (except religion) in certain situations, but they may not use it to discriminate against you when deciding whether to grant you credit.

The ECOA protects consumers who deal with companies that regularly extend credit, including banks, small loan and finance companies, retail and department stores, credit card companies, and credit unions. Everyone who participates in the decision to grant credit, including real estate brokers who arrange financing, must follow this law.

Businesses applying for credit also are protected by this law. Under the Equal Credit Opportunity Act:

- You cannot be denied credit based on your race, sex, marital status, religion, age, national origin, or receipt of public assistance.
- You have the right to have reliable public assistance considered in the same manner as other income.
- If you are denied credit, you have a legal right to know why.

For details, see *Equal Credit Opportunity* at ftc.gov/credit.

Your Credit Billing and Electronic Fund Transfer Statements

It is important to check credit billing and electronic fund transfer account statements regularly because these documents may contain mistakes that could damage your credit status or reflect improper charges or transfers. If you find an error or discrepancy, notify the company and dispute the error immediately. **The Fair Credit Billing Act (FCBA)** and **Electronic Fund Transfer Act (EFTA)** establish procedures for resolving mistakes on credit billing and electronic fund transfer account statements, including:

- charges or electronic fund transfers that you – or anyone you have authorized to use your account – have not made;
- charges or electronic fund transfers that are incorrectly identified or show the wrong date or amount;
- math errors;
- failure to post payments, credits, or electronic fund transfers properly;
- failure to send bills to your current address – provided the creditor receives your change of address, in writing, at least 20 days before the billing period ends;
- charges or electronic fund transfers for which you ask for an explanation or written proof of purchase along with a claimed error or request for clarification.

The FCBA generally applies only to "open end" credit accounts – credit cards and revolving charge accounts, like department store accounts. It does not apply to loans or credit sales that are paid according to a fixed schedule until the entire amount is paid back, like an automobile loan. The EFTA applies to electronic fund transfers, like those involving automatic teller machines (ATMs), point-of-sale debit transactions, and other electronic banking transactions.

For details, see *Fair Credit Billing* and *A Consumer's Guide to E-Payments* at ftc.gov/credit.

# Your Debts and Debt Collectors

You are responsible for your debts. If you fall behind in paying your creditors, or if an error is made on your account, you may be contacted by a "debt collector." A debt collector is any person, other than the creditor, who regularly collects debts owed to others, including lawyers who collect debts on a regular basis. You have the right to be treated fairly by debt collectors.

**The Fair Debt Collection Practices Act (FDCPA)** applies to personal, family, and household debts. This includes money you owe for the purchase of a car, for medical care, or for charge accounts. The FDCPA prohibits debt collectors from engaging in unfair, deceptive, or abusive practices while collecting these debts. Under the Fair Debt Collection Practices Act:

- Debt collectors may contact you only between 8 a.m. and 9 p.m.
- Debt collectors may not contact you at work if they know your employer disapproves.
- Debt collectors may not harass, oppress, or abuse you.
- Debt collectors may not lie when collecting debts, such as falsely implying that you have committed a crime.
- Debt collectors must identify themselves to you on the phone.
- Debt collectors must stop contacting you if you ask them to do so in writing.

For details, see *Fair Debt Collection* at ftc.gov/credit.

# Solving Your Credit Problems

Your credit report can influence your purchasing power, as well as your opportunity to get a job, rent or buy an apartment or a house, and buy insurance. When negative information in your report is accurate, only the passage of time can assure its removal. A consumer reporting company can report most accurate negative information for seven years and bankruptcy information for 10 years. Information about an unpaid judgment against you can be reported for seven years or until the statute of limitations runs out, whichever is longer. There is no time limit on reporting information about criminal convictions; information reported in response to your application for a job that pays more than $75,000 a year; and information reported because you've applied for more than $150,000 worth of credit or life insurance. There is a standard method for calculating the seven-year reporting period. Generally, the period runs from the date that the event took place.

If you are having problems paying your bills, contact your creditors immediately. Try to work out a modified payment plan with them that reduces your payments to a more manageable level. Don't wait until your account has been turned over to a debt collector.

Here are some additional tips for solving credit problems:

- If you want to dispute a credit report, bill or credit denial, write to the appropriate company and send your letter "return receipt requested."
- When you dispute a billing error, include your name, account number, the dollar amount in question, and the reason you believe the bill is wrong.
- If in doubt, request written verification of a debt.
- Keep all your original documents, especially receipts, sales slips, and billing statements. You will need them if you dispute a credit bill or report. Send copies only. It may take more than one letter to correct a problem.
- Be skeptical of businesses that offer instant solutions to credit problems: There aren't any.
- Be persistent. Resolving credit problems can take time and patience.
- There is nothing that a credit repair company can charge you for that you cannot do for yourself for little or no cost.

If you're not disciplined enough to create a workable budget and stick to it, work out a repayment plan with your creditors, or keep track of mounting bills, consider contacting a credit counseling organization. Many credit counseling organizations are nonprofit and work with you to solve your financial problems. But not all are reputable. For example, just because an organization says it's "nonprofit," there's no guarantee that its services are free, affordable, or even legitimate. In fact, some credit counseling organizations charge high fees, or hide their fees by pressuring consumers to make "voluntary" contributions that only cause more debt.

Most credit counselors offer services through local offices, the Internet, or on the telephone. If possible, find an organization that offers in-person counseling. Many universities, military bases, credit unions, housing authorities, and branches of the U.S. Cooperative Extension Service operate nonprofit credit counseling programs. Your financial institution, local consumer protection agency, and friends and family also may be good sources of information and referrals.

Reputable credit counseling organizations can advise you on managing your money and debts, help you develop a budget, and offer free educational materials and workshops. Their counselors are certified and trained in the areas of consumer credit, money and debt management, and budgeting. Counselors discuss your entire financial situation with you, and help you develop a personalized plan to solve your money problems. An initial counseling session typically lasts an hour, with an offer of follow-up sessions.

For more information, see *Knee Deep in Debt* and Fiscal Fitness: Choosing a Credit Counselor at ftc.gov/credit.

The FTC works for the consumer to prevent fraudulent, deceptive, and unfair business practices in the marketplace and to provide information to help consumers spot, stop, and avoid them. To file a complaint or to get free information on consumer issues, visit ftc.gov or call toll-free, 1-877-FTC-HELP (1-877-382-4357); TTY: 1-866-653-4261. The FTC enters consumer complaints into the Consumer Sentinel Network, a secure online database and investigative tool used by hundreds of civil and criminal law enforcement agencies in the U.S. and abroad.

**March 2005**

Last Modified: Friday, 24-Apr-2009 16:47:00 EDT

(A)   the agency has followed reasonable procedures to obtain confirmation of the information, from an additional source that has independent and direct knowledge of the information; or

(B)   the person interviewed is the best possible source of the information.

## § 607. Compliance procedures [15 U.S.C. § 1681e]

(a) *Identity and purposes of credit users.* Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 605 [§ 1681c] and to limit the furnishing of consumer reports to the purposes listed under section 604 [§ 1681b] of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 604 [§ 1681b] of this title.

(b) *Accuracy of report.* Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

(c) *Disclosure of consumer reports by users allowed.* A consumer reporting agency may not prohibit a user of a consumer report furnished by the agency on a consumer from disclosing the contents of the report to the consumer, if adverse action against the consumer has been taken by the user based in whole or in part on the report.

(d) Notice to Users and Furnishers of Information

(1) *Notice requirement.* A consumer reporting agency shall provide to any person

(A)   who regularly and in the ordinary course of business furnishes information to the agency with respect to any consumer; or

(B)   to whom a consumer report is provided by the agency;

a notice of such person's responsibilities under this title.

(2) *Content of notice.* The Federal Trade Commission shall prescribe the content of notices under paragraph (1), and a consumer reporting agency shall be in compliance with this subsection if it provides a notice under paragraph (1) that is substantially similar to the Federal Trade Commission prescription under this paragraph.

(e) Procurement of Consumer Report for Resale

(1) *Disclosure.* A person may not procure a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report

    (A)    the identity of the end-user of the report (or information); and

    (B)    each permissible purpose under section 604 [§ 1681b] for which the report is furnished to the end-user of the report (or information).

(2) *Responsibilities of procurers for resale.* A person who procures a consumer report for purposes of reselling the report (or any information in the report) shall

    (A)    establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 604 [§ 1681b], including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person

        (i)    identifies each end user of the resold report (or information);

        (ii)    certifies each purpose for which the report (or information) will be used; and

        (iii)    certifies that the report (or information) will be used for no other purpose; and

    (B)    before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).

(3) *Resale of consumer report to a federal agency or department.* Notwithstanding paragraph (1) or (2), a person who procures a consumer report for purposes of reselling the report (or any information in the report) shall not disclose the identity of the end-user of the report under paragraph (1) or (2) if--

    (A)    the end user is an agency or department of the United States Government which procures the report from the person for purposes of determining the eligibility of the consumer concerned to receive access or continued access to classified information (as defined in section 604(b)(4)(E)(i)); and

    (B)    the agency or department certifies in writing to the person reselling the report that nondisclosure is necessary to protect classified information or the safety of persons employed by or contracting with, or undergoing investigation for work or contracting with the agency or department.

## § 608. Disclosures to governmental agencies [15 U.S.C. § 1681f]

Notwithstanding the provisions of section 604 [§ 1681b] of this title, a consumer reporting agency may furnish identifying information respecting any consumer, limited to

his name, address, former addresses, places of employment, or former places of employment, to a governmental agency.

## § 609. Disclosures to consumers [15 U.S.C. § 1681g]

(a) *Information on file; sources; report recipients.* Every consumer reporting agency shall, upon request, and subject to 610(a)(1) [§ 1681h], clearly and accurately disclose to the consumer:

(1) All information in the consumer's file at the time of the request except that--

(A)    if the consumer to whom the file relates requests that the first 5 digits of the social security number (or similar identification number) of the consumer not be included in the disclosure and the consumer reporting agency has received appropriate proof of the identity of the requester, the consumer reporting agency shall so truncate such number in such disclosure; and

(B)    nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer.

(2) The sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually use for no other purpose need not be disclosed: Provided, That in the event an action is brought under this title, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought.

(3)(A)    Identification of each person (including each end-user identified under section 607(e)(1) [§ 1681e]) that procured a consumer report

(i)    for employment purposes, during the 2-year period preceding the date on which the request is made; or

(ii)    for any other purpose, during the 1-year period preceding the date on which the request is made.

(B)    An identification of a person under subparagraph (A) shall include

(i)    the name of the person or, if applicable, the trade name (written in full) under which such person conducts business; and

(ii)    upon request of the consumer, the address and telephone number of the person.

(C)    Subparagraph (A) does not apply if--

(i)    the end user is an agency or department of the United States Government that procures the report from the person for purposes of

determining the eligibility of the consumer to whom the report relates to receive access or continued access to classified information (as defined in section 604(b)(4)(E)(i)); and

    (ii)    the head of the agency or department makes a written finding as prescribed under section 604(b)(4)(A).

(4) The dates, original payees, and amounts of any checks upon which is based any adverse characterization of the consumer, included in the file at the time of the disclosure.

(5) A record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer.

(6) If the consumer requests the credit file and not the credit score, a statement that the consumer may request and obtain a credit score.

(b) *Exempt information.* The requirements of subsection (a) of this section respecting the disclosure of sources of information and the recipients of consumer reports do not apply to information received or consumer reports furnished prior to the effective date of this title except to the extent that the matter involved is contained in the files of the consumer reporting agency on that date.

(c) Summary of Rights to Obtain and Dispute Information in Consumer Reports and to Obtain Credit Scores

(1) Commission Summary of Rights Required

    (A)    *In general.* The Commission shall prepare a model summary of the rights of consumers under this title.

    (B)    *Content of summary.* The summary of rights prepared under subparagraph (A) shall include a description of–

        (i)    the right of a consumer to obtain a copy of a consumer report under subsection (a) from each consumer reporting agency;

        (ii)    the frequency and circumstances under which a consumer is entitled to receive a consumer report without charge under section 612;

        (iii)    the right of a consumer to dispute information in the file of the consumer under section 611;

        (iv)    the right of a consumer to obtain a credit score from a consumer reporting agency, and a description of how to obtain a credit score;

        (v)    the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency without charge, as provided in the regulations of the Commission prescribed under section 211(c) of the Fair and Accurate Credit Transactions Act of 2003; and

      (vi)    the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency described in section 603(w), as provided in the regulations of the Commission prescribed under section 612(a)(1)(C).

   (C)    *Availability of summary of rights.* The Commission shall--

      (i)    actively publicize the availability of the summary of rights prepared under this paragraph;

      (ii)    conspicuously post on its Internet website the availability of such summary of rights; and

      (iii)    promptly make such summary of rights available to consumers, on request.

(2) *Summary of rights required to be included with agency disclosures.* A consumer reporting agency shall provide to a consumer, with each written disclosure by the agency to the consumer under this section--

   (A)    the summary of rights prepared by the Commission under paragraph (1);

   (B)    in the case of a consumer reporting agency described in section 603(p), a toll-free telephone number established by the agency, at which personnel are accessible to consumers during normal business hours;

   (C)    a list of all Federal agencies responsible for enforcing any provision of this title, and the address and any appropriate phone number of each such agency, in a form that will assist the consumer in selecting the appropriate agency;

   (D)    a statement that the consumer may have additional rights under State law, and that the consumer may wish to contact a State or local consumer protection agency or a State attorney general (or the equivalent thereof) to learn of those rights; and

   (E)    a statement that a consumer reporting agency is not required to remove accurate derogatory information from the file of a consumer, unless the information is outdated under section 605 or cannot be verified.

(d) Summary of Rights of Identity Theft Victims

(1) *In general.* The Commission, in consultation with the Federal banking agencies and the National Credit Union Administration, shall prepare a model summary of the rights of consumers under this title with respect to the procedures for remedying the effects of fraud or identity theft involving credit, an electronic fund transfer, or an account or transaction at or with a financial institution or other creditor.

(2) *Summary of rights and contact information.* Beginning 60 days after the date on which the model summary of rights is prescribed in final form by the Commission pursuant to paragraph (1), if any consumer contacts a consumer reporting agency and expresses a belief that the consumer is a victim of fraud or identity theft

involving credit, an electronic fund transfer, or an account or transaction at or with a financial institution or other creditor, the consumer reporting agency shall, in addition to any other action that the agency may take, provide the consumer with a summary of rights that contains all of the information required by the Commission under paragraph (1), and information on how to contact the Commission to obtain more detailed information.

(e) Information Available to Victims

(1) *In general.* For the purpose of documenting fraudulent transactions resulting from identity theft, not later than 30 days after the date of receipt of a request from a victim in accordance with paragraph (3), and subject to verification of the identity of the victim and the claim of identity theft in accordance with paragraph (2), a business entity that has provided credit to, provided for consideration products, goods, or services to, accepted payment from, or otherwise entered into a commercial transaction for consideration with, a person who has allegedly made unauthorized use of the means of identification of the victim, shall provide a copy of application and business transaction records in the control of the business entity, whether maintained by the business entity or by another person on behalf of the business entity, evidencing any transaction alleged to be a result of identity theft to--

(A)     the victim;

(B)     any Federal, State, or local government law enforcement agency or officer specified by the victim in such a request; or

(C)     any law enforcement agency investigating the identity theft and authorized by the victim to take receipt of records provided under this subsection.

(2) *Verification of identity and claim.* Before a business entity provides any information under paragraph (1), unless the business entity, at its discretion, otherwise has a high degree of confidence that it knows the identity of the victim making a request under paragraph (1), the victim shall provide to the business entity--

(A)     as proof of positive identification of the victim, at the election of the business entity–

(i)     the presentation of a government-issued identification card;

(ii)    personally identifying information of the same type as was provided to the business entity by the unauthorized person; or

(iii)   personally identifying information that the business entity typically requests from new applicants or for new transactions, at the time of the victim's request for information, including any documentation described in clauses (i) and (ii); and

(B)     as proof of a claim of identity theft, at the election of the business entity--

(i)     a copy of a police report evidencing the claim of the victim of identity theft; and

    (ii)    a properly completed--

        (I)    copy of a standardized affidavit of identity theft developed and made available by the Commission; or

        (II)    an affidavit of fact that is acceptable to the business entity for that purpose.

(3) *Procedures.* The request of a victim under paragraph (1) shall--

    (A)    be in writing;

    (B)    be mailed to an address specified by the business entity, if any; and

    (C)    if asked by the business entity, include relevant information about any transaction alleged to be a result of identity theft to facilitate compliance with this section including--

        (i)    if known by the victim (or if readily obtainable by the victim), the date of the application or transaction; and

        (ii)    if known by the victim (or if readily obtainable by the victim), any other identifying information such as an account or transaction number.

(4) *No charge to victim.* Information required to be provided under paragraph (1) shall be so provided without charge.

(5) *Authority to decline to provide information.* A business entity may decline to provide information under paragraph (1) if, in the exercise of good faith, the business entity determines that--

    (A)    this subsection does not require disclosure of the information;

    (B)    after reviewing the information provided pursuant to paragraph (2), the business entity does not have a high degree of confidence in knowing the true identity of the individual requesting the information;

    (C)    the request for the information is based on a misrepresentation of fact by the individual requesting the information relevant to the request for information; or

    (D)    the information requested is Internet navigational data or similar information about a person's visit to a website or online service.

(6) *Limitation on liability.* Except as provided in section 621, sections 616 and 617 do not apply to any violation of this subsection.

(7) *Limitation on civil liability.*  No business entity may be held civilly liable under any provision of Federal, State, or other law for disclosure, made in good faith pursuant to this subsection.

(8) *No new recordkeeping obligation.*  Nothing in this subsection creates an obligation on the part of a business entity to obtain, retain, or maintain information or records that are not otherwise required to be obtained, retained, or maintained in the ordinary course of its business or under other applicable law.

(9) Rule of Construction

    (A)    *In general.*  No provision of subtitle A of title V of Public Law 106-102, prohibiting the disclosure of financial information by a business entity to third parties shall be used to deny disclosure of information to the victim under this subsection.

    (B)    *Limitation.*  Except as provided in subparagraph (A), nothing in this subsection permits a business entity to disclose information, including information to law enforcement under subparagraphs (B) and (C) of paragraph (1), that the business entity is otherwise prohibited from disclosing under any other applicable provision of Federal or State law.

(10) *Affirmative defense.*  In any civil action brought to enforce this subsection, it is an affirmative defense (which the defendant must establish by a preponderance of the evidence) for a business entity to file an affidavit or answer stating that--

    (A)    the business entity has made a reasonably diligent search of its available business records; and

    (B)    the records requested under this subsection do not exist or are not reasonably available.

(11) *Definition of victim.* For purposes of this subsection, the term "victim" means a consumer whose means of identification or financial information has been used or transferred (or has been alleged to have been used or transferred) without the authority of that consumer, with the intent to commit, or to aid or abet, an identity theft or a similar crime.

(12) *Effective date.* This subsection shall become effective 180 days after the date of enactment of this subsection.

(13) *Effectiveness study.*  Not later than 18 months after the date of enactment of this subsection, the Comptroller General of the United States shall submit a report to Congress assessing the effectiveness of this provision.

(f) Disclosure of Credit Scores

    (1) *In general.*  Upon the request of a consumer for a credit score, a consumer reporting agency shall supply to the consumer a statement indicating that the

(7) *Compliance.*  A person shall not be liable for failure to perform the duties required by this section if, at the time of the failure, the person maintained reasonable policies and procedures to comply with this section.

(8) Enforcement

    (A)   *No civil actions.*  Sections 616 and 617 shall not apply to any failure by any person to comply with this section.

    (B)   *Administrative enforcement.*  This section shall be enforced exclusively under section 621 by the Federal agencies and officials identified in that section.

## § 616.  Civil liability for willful noncompliance [15 U.S.C. § 1681n]

(a) *In general.*  Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

    (1) (A)   any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

        (B)   in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

    (2) such amount of punitive damages as the court may allow; and

    (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(b) *Civil liability for knowing noncompliance.*  Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

(c) *Attorney's fees.*  Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

## § 617.  Civil liability for negligent noncompliance [15 U.S.C. § 1681o]

(a) *In general.*  Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(b) *Attorney's fees.* On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

### § 618. Jurisdiction of courts; limitation of actions  [15 U.S.C. § 1681p]

An action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.

### § 619. Obtaining information under false pretenses [15 U.S.C. § 1681q]

Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, United States Code, imprisoned for not more than 2 years, or both.

### § 620. Unauthorized disclosures by officers or employees [15 U.S.C. § 1681r]

Any officer or employee of a consumer reporting agency who knowingly and willfully provides information concerning an individual from the agency's files to a person not authorized to receive that information shall be fined under title 18, United States Code, imprisoned for not more than 2 years, or both.

### § 621. Administrative enforcement [15 U.S.C. § 1681s]

(a) (1) *Enforcement by Federal Trade Commission.* Compliance with the requirements imposed under this title shall be enforced under the Federal Trade Commission Act [15 U.S.C. §§ 41 et seq.] by the Federal Trade Commission with respect to consumer reporting agencies and all other persons subject thereto, except to the extent that enforcement of the requirements imposed under this title is specifically committed to some other government agency under subsection (b) hereof. For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, a violation of any requirement or prohibition imposed under this title shall constitute an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act [15 U.S.C. § 45(a)] and shall be subject to enforcement by the Federal Trade Commission under section 5(b) thereof [15 U.S.C. § 45(b)] with respect to any consumer reporting agency or person subject to enforcement by the Federal Trade Commission pursuant to this subsection, irrespective of whether

that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act. The Federal Trade Commission shall have such procedural, investigative, and enforcement powers, including the power to issue procedural rules in enforcing compliance with the requirements imposed under this title and to require the filing of reports, the production of documents, and the appearance of witnesses as though the applicable terms and conditions of the Federal Trade Commission Act were part of this title. Any person violating any of the provisions of this title shall be subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act as though the applicable terms and provisions thereof were part of this title.

(2) (A)   In the event of a knowing violation, which constitutes a pattern or practice of violations of this title, the Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person that violates this title. In such action, such person shall be liable for a civil penalty of not more than $2,500 per violation.

   (B)   In determining the amount of a civil penalty under subparagraph (A), the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require.

(3) Notwithstanding paragraph (2), a court may not impose any civil penalty on a person for a violation of section 623(a)(1) [§ 1681s-2] unless the person has been enjoined from committing the violation, or ordered not to commit the violation, in an action or proceeding brought by or on behalf of the Federal Trade Commission, and has violated the injunction or order, and the court may not impose any civil penalty for any violation occurring before the date of the violation of the injunction or order.

(b) *Enforcement by other agencies.* Compliance with the requirements imposed under this title with respect to consumer reporting agencies, persons who use consumer reports from such agencies, persons who furnish information to such agencies, and users of information that are subject to subsection (d) of section 615 [§ 1681m] shall be enforced under

(1) section 8 of the Federal Deposit Insurance Act [12 U.S.C. § 1818], in the case of

   (A)   national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

   (B)   member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. §§ 601 et seq., §§ 611 et seq], by the Board of Governors of the Federal Reserve System; and

(C)     banks insured by the Federal Deposit Insurance Corporation (other than mem-
bers of the Federal Reserve System) and insured State branches of foreign
banks, by the Board of Directors of the Federal Deposit Insurance Corporation;

(2) section 8 of the Federal Deposit Insurance Act [12 U.S.C. § 1818], by the
Director of the Office of Thrift Supervision, in the case of a savings association
the deposits of which are insured by the Federal Deposit Insurance Corporation;

(3) the Federal Credit Union Act [12 U.S.C. §§ 1751 et seq.], by the Administrator of
the National Credit Union Administration [National Credit Union Administration
Board] with respect to any Federal credit union;

(4) subtitle IV of title 49 [49 U.S.C. §§ 10101 et seq.], by the Secretary of
Transportation, with respect to all carriers subject to the jurisdiction of the Surface
Transportation Board;

(5) the Federal Aviation Act of 1958 [49 U.S.C. Appx §§ 1301 et seq.], by the
Secretary of Transportation with respect to any air carrier or foreign air carrier
subject to that Act [49 U.S.C. Appx §§ 1301 et seq.]; and

(6) the Packers and Stockyards Act, 1921 [7 U.S.C. §§ 181 et seq.] (except as
provided in section 406 of that Act [7 U.S.C. §§ 226 and 227]), by the Secretary
of Agriculture with respect to any activities subject to that Act.

The terms used in paragraph (1) that are not defined in this title or otherwise defined in sec-
tion 3(s) of the Federal Deposit Insurance Act (12 U.S.C. §1813(s)) shall have the meaning
given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. §3101).

(c) State Action for Violations

(1) *Authority of states.* In addition to such other remedies as are provided under State
law, if the chief law enforcement officer of a State, or an official or agency
designated by a State, has reason to believe that any person has violated or is
violating this title, the State

(A)     may bring an action to enjoin such violation in any appropriate United
States district court or in any other court of competent jurisdiction;

(B)     subject to paragraph (5), may bring an action on behalf of the residents of
the State to recover

(i)     damages for which the person is liable to such residents under sections
616 and 617 [§§ 1681n and 1681o] as a result of the violation;

(ii)    in the case of a violation described in any of paragraphs (1) through (3) of
section 623(c), damages for which the person would, but for section
623(c) [§ 1681s-2], be liable to such residents as a result of the violation;
or

(iii)   damages of not more than $1,000 for each willful or negligent violation; and

(C)    in the case of any successful action under subparagraph (A) or (B), shall be awarded the costs of the action and reasonable attorney fees as determined by the court.

(2) *Rights of federal regulators.*  The State shall serve prior written notice of any action under paragraph (1) upon the Federal Trade Commission or the appropriate Federal regulator determined under subsection (b) and provide the Commission or appropriate Federal regulator with a copy of its complaint, except in any case in which such prior notice is not feasible, in which case the State shall serve such notice immediately upon instituting such action. The Federal Trade Commission or appropriate Federal regulator shall have the right

(A)    to intervene in the action;

(B)    upon so intervening, to be heard on all matters arising therein;

(C)    to remove the action to the appropriate United States district court; and

(D)    to file petitions for appeal.

(3) *Investigatory powers.*  For purposes of bringing any action under this subsection, nothing in this subsection shall prevent the chief law enforcement officer, or an official or agency designated by a State, from exercising the powers conferred on the chief law enforcement officer or such official by the laws of such State to conduct investigations or to administer oaths or affirmations or to compel the attendance of witnesses or the production of documentary and other evidence.

(4) *Limitation on state action while federal action pending.*  If the Federal Trade Commission or the appropriate Federal regulator has instituted a civil action or an administrative action under section 8 of the Federal Deposit Insurance Act for a violation of this title, no State may, during the pendency of such action, bring an action under this section against any defendant named in the complaint of the Commission or the appropriate Federal regulator for any violation of this title that is alleged in that complaint.

(5) Limitations on State Actions for Certain Violations

(A)    *Violation of injunction required.*  A State may not bring an action against a person under paragraph (1)(B) for a violation described in any of paragraphs (1) through (3) of section 623(c), unless

(i)    the person has been enjoined from committing the violation, in an action brought by the State under paragraph (1)(A); and

(ii)    the person has violated the injunction.

(B)    *Limitation on damages recoverable.*  In an action against a person under paragraph (1)(B) for a violation described in any of paragraphs (1) through (3) of section 623(c), a State may not recover any damages incurred before the date of the violation of an injunction on which the action is based.

(d) *Enforcement under other authority.* For the purpose of the exercise by any agency referred to in subsection (b) of this section of its powers under any Act referred to in that subsection, a violation of any requirement imposed under this title shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in subsection (b) of this section, each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this title any other authority conferred on it by law.

(e) Regulatory authority

(1) The Federal banking agencies referred to in paragraphs (1) and (2) of subsection (b) shall jointly prescribe such regulations as necessary to carry out the purposes of this Act with respect to any persons identified under paragraphs (1) and (2) of subsection (b), and the Board of Governors of the Federal Reserve System shall have authority to prescribe regulations consistent with such joint regulations with respect to bank holding companies and affiliates (other than depository institutions and consumer reporting agencies) of such holding companies.

(2) The Board of the National Credit Union Administration shall prescribe such regulations as necessary to carry out the purposes of this Act with respect to any persons identified under paragraph (3) of subsection (b).

(f) Coordination of Consumer Complaint Investigations

(1) *In general.* Each consumer reporting agency described in section 603(p) shall develop and maintain procedures for the referral to each other such agency of any consumer complaint received by the agency alleging identity theft, or requesting a fraud alert under section 605A or a block under section 605B.

(2) *Model form and procedure for reporting identity theft.* The Commission, in consultation with the Federal banking agencies and the National Credit Union Administration, shall develop a model form and model procedures to be used by consumers who are victims of identity theft for contacting and informing creditors and consumer reporting agencies of the fraud.

(3) *Annual summary reports.* Each consumer reporting agency described in section 603(p) shall submit an annual summary report to the Commission on consumer complaints received by the agency on identity theft or fraud alerts.

(g) *FTC regulation of coding of trade names.* If the Commission determines that a person described in paragraph (9) of section 623(a) has not met the requirements of such paragraph, the Commission shall take action to ensure the person's compliance with such paragraph, which may include issuing model guidance or prescribing reasonable policies and procedures, as necessary to ensure that such person complies with such paragraph.

**§ 622. Information on overdue child support obligations** [15 U.S.C. § 1681s-1]

Notwithstanding any other provision of this title, a consumer reporting agency shall include in any consumer report furnished by the agency in accordance with section 604 [§ 1681b] of this title, any information on the failure of the consumer to pay overdue support which

> (1) is provided

>> (A)   to the consumer reporting agency by a State or local child support enforcement agency; or

>> (B)   to the consumer reporting agency and verified by any local, State, or Federal government agency; and

> (2) antedates the report by 7 years or less.

## § 623. Responsibilities of furnishers of information to consumer reporting agencies
[15 U.S.C. § 1681s-2]

(a) Duty of Furnishers of Information to Provide Accurate Information

(1) Prohibition

> (A)   *Reporting information with actual knowledge of errors.*  A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

> (B)   *Reporting information after notice and confirmation of errors.*  A person shall not furnish information relating to a consumer to any consumer reporting agency if

>> (i)   the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

>> (ii)   the information is, in fact, inaccurate.

> (C)   *No address requirement.*  A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

> (D)   *Definition.*  For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

(2) *Duty to correct and update information.*  A person who

(A)     regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B)     has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) *Duty to provide notice of dispute.* If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

(4) *Duty to provide notice of closed accounts.* A person who regularly and in the ordinary course of business furnishes information to a consumer reporting agency regarding a consumer who has a credit account with that person shall notify the agency of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed.

(5) Duty to Provide Notice of Delinquency of Accounts

(A)     *In general.* A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action.

(B)     *Rule of construction.* For purposes of this paragraph only, and provided that the consumer does not dispute the information, a person that furnishes information on a delinquent account that is placed for collection, charged for profit or loss, or subjected to any similar action, complies with this paragraph, if--

(i)     the person reports the same date of delinquency as that provided by the creditor to which the account was owed at the time at which the commencement of the delinquency occurred, if the creditor previously reported that date of delinquency to a consumer reporting agency;

(ii)    the creditor did not previously report the date of delinquency to a consumer reporting agency, and the person establishes and follows reasonable procedures to obtain the date of delinquency from the creditor or another reliable source and reports that date to a consumer reporting agency as the date of delinquency; or



    (iii)    the creditor did not previously report the date of delinquency to a consumer reporting agency and the date of delinquency cannot be reasonably obtained as provided in clause (ii), the person establishes and follows reasonable procedures to ensure the date reported as the date of delinquency precedes the date on which the account is placed for collection, charged to profit or loss, or subjected to any similar action, and reports such date to the credit reporting agency.

(6) Duties of Furnishers Upon Notice of Identity Theft-Related Information

    (A)    *Reasonable procedures.* A person that furnishes information to any consumer reporting agency shall have in place reasonable procedures to respond to any notification that it receives from a consumer reporting agency under section 605B relating to information resulting from identity theft, to prevent that person from refurnishing such blocked information.

    (B)    *Information alleged to result from identity theft.* If a consumer submits an identity theft report to a person who furnishes information to a consumer reporting agency at the address specified by that person for receiving such reports stating that information maintained by such person that purports to relate to the consumer resulted from identity theft, the person may not furnish such information that purports to relate to the consumer to any consumer reporting agency, unless the person subsequently knows or is informed by the consumer that the information is correct.

(7) Negative Information

    (A)    Notice to Consumer Required

        (i)    *In general.* If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 603(p) furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.

        (ii)    *Notice effective for subsequent submissions.* After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 603(p) with respect to the same transaction, extension of credit, account, or customer without providing additional notice to the customer.

    (B)    Time of Notice

        (i)    *In general.* The notice required under subparagraph (A) shall be provided to the customer prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency described in section 603(p).